UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRESTONE FINANCIAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 04519 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| KING AMUSEMENTS, INC., FRED | ) | |
| KING, AND SANDRA KING, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Firestone Financial Corporation filed this breach-of-contract suit against Defendants King Amusements, Inc. and Fred and Sandra King.[1] Firestone alleges that King Amusements owes almost $95,000 after defaulting on two promissory notes that were assigned to Firestone from American Vending Sales, Inc. (AVS). R. 1, Compl. Firestone brings a claim against King Amusements for breach of contract (Count 1); brings claims against Fred and Sandra King for breach of guaranty (Counts 2 and 3); and seeks orders of replevin and detinue to recover the collateral securing the debt (Counts 4 and 5). *Id.* at 7-11. After Firestone filed its motion for replevin [R. 20], Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1332. Specifically, Plaintiff Firestone is a citizen of Massachusetts because it is both incorporated in Massachusetts and has its principal place of business there. Defendant King Amusements is a citizen of Illinois because it is both incorporated here and has its principal place of business here. Defendants Fred and Sandra King are also citizens of Illinois. The amount-in-controversy requirement is satisfied because Firestone seeks replevin of gaming equipment securing nearly $95,000 in debt allegedly owed by Defendants; it is therefore not "legally impossible" for Firestone to recover more than $75,000. *Back Doctors Ltd v. Metropolitan Property and Cas. Ins. Co.,* 637 F.3d 827, 829 (7th Cir. 2011) (re-emphasizing that amount-in-controversy requirement is satisfied unless it is "legally impossible" for plaintiff to recover that amount).

join a necessary party under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) [R. 24]. King Amusements also asserts amended counterclaims against Firestone [R. 41], which Firestone moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). [R. 45]. For the following reasons, Defendants' motion to dismiss is denied, Firestone's motion to dismiss the counterclaims is denied, and Firestone's motion for replevin is denied without prejudice.

## I. Background

In evaluating these motions to dismiss, the Court accepts as true the complaints' factual allegations and draws reasonable inferences in each plaintiff's (be it a plaintiff or counter-plaintiff) favor. *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2079 (2011). In 2008, AVS sold around $26,710 worth of video gaming equipment to King Amusements, which is an Illinois corporation. Compl. ¶ 2; R. 1-1, Pl.'s Exh. 7. The sale was financed by a promissory note that King Amusements executed in favor of AVS for the amount owed, and collateralized by the gaming equipment. See Compl. ¶¶ 16, 18; R.1-1, Pl.'s Exh. 6; Pl.'s Exh. 7 at 1. Fred and Sandra King personally guaranteed payment of the debt. R. 1-1, Pl.'s Exh. 8. AVS then assigned the debt and security agreement to Firestone (a Massachusetts corporation), who perfected its security interest by filing a financing statement in Illinois under the Uniform Commercial Code (UCC). Compl. ¶¶ 1, 19, 22; Pl.'s Exh. 7 at 5; R. 1-1, Pl.'s Exh. 9. In 2009, King Amusements repeated this transaction on a larger scale: it purchased gaming equipment totaling $96,742.80 from AVS, financed the sale with a promissory note that

2

was again secured by the purchased equipment, and Fred and Sandra King personally guaranteed payment. Compl. ¶¶ 7-9, 11; R.1-1, Pl.'s Exhs. 1-3. AVS again assigned the debt and associated security agreement to Firestone, who properly perfected its security interest. Compl. ¶¶ 10, 12; R. 1-1, Pl.'s Exh. 2 at 6; R. 1-1, Pl.'s Exh. 4.

In March 2010, King Amusements and Firestone restructured both loans by executing two letter rewrite agreements that decreased King Amusements' monthly debt payments. Compl. ¶¶ 13-14, 23-24; R. 1-1, Pl.'s Exhs. 5, 10. But despite restructuring the debt, King Amusements has allegedly defaulted on both loans, and the Kings are personally liable for the remaining balance of $92,590.10 (plus late fees, costs, and interest). Compl. ¶¶ 28-38, 42, 47. Firestone seeks both damages and the return of the collateral securing Firestone's debt. *Id.* at 9-11.

For its part, King Amusements claims that Firestone shares some of the liability. In its amended counterclaims, King Amusements acknowledges executing the promissory notes, but alleges that AVS, acting as an agent for Firestone, repossessed gaming equipment that King Amusements controlled. R. 41, Am. Countercl. ¶¶ 4-5, 8. Firestone then sold the repossessed equipment to third parties for less than fair market value, without giving King Amusements notice of the sales as required by the security agreements. *Id.* ¶¶ 9-13; Pl.'s Exh. 2 ¶ 5; Pl.'s Exh. 7 ¶ 5. King Amusements thus counterclaims against Firestone for breach of contract. Am. Countercl. at 2-3.

King Amusements also counterclaims for what it calls "set off," appearing to allege that Firestone sold gaming equipment that was actually owned by TouchTunes

3

Music Corporation to a third party, which negatively impacted the business relationship between King Amusements and TouchTunes, and also deprived King Amusements of revenue. *Id.* ¶¶ 19, 21-22. As a result, King Amusements "settled its account" with TouchTunes for an amount that included the gaming equipment allegedly removed by Firestone. *Id.* ¶ 20. In all, King Amusements seeks compensatory damages for Firestone's alleged breach of contract, as well as a set off against the amount it allegedly owes to Firestone.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides the procedural vehicle by which a defendant may move to dismiss a claim or suit on the ground that the court lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). The plaintiff bears the burden of proving that the federal courts have subject matter jurisdiction over the action. *Muscarello v. Ogle Cnty. Bd. of Commr's*, 610 F.3d 416, 425 (7th Cir. 2010) (citations omitted).

If the case gets past the jurisdictional question, then the complaint must also adequately state a legal claim that would entitle the plaintiff to relief. Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has

4

explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

### A. Joinder of AVS

First, Defendants move to dismiss Firestone's complaint under Federal Rules of Civil Procedure 12(b)(1) (lack of jurisdiction) and 12(b)(7) (failure to join a necessary party). It takes a few steps to get to the argument's end, but it starts with this: Defendants argue that AVS (remember, AVS is the original seller of the equipment and the original creditor) is liable to Defendants because, despite AVS's assignment of its interests in the two promissory notes to Firestone, AVS allegedly has "maintained a

5

continuing commercial interest" by repossessing gaming equipment on Firestone's behalf. R. 24, Defs.' Br. ¶ 3. Accordingly, Defendants believe that AVS—a nonparty to this lawsuit—is an indispensable party (in Defendants' view, an indispensable plaintiff) under Federal Rule of Civil Procedure 19(a)(1)(A) or (B). *Id.* ¶ 10. But because AVS is a citizen of Illinois, the mandatory joinder of AVS as a plaintiff would put citizens of Illinois on both sides of the case (because Defendants are also citizens of Illinois), which would destroy complete diversity of citizenship, and thus AVS cannot be added to the case. *Id.* ¶ 11. Because this case cannot, according to Defendants, be fairly adjudicated without AVS as a plaintiff—and now we finally arrive at this argument's end—this Court should dismiss the case under Rule 19(b).[2] *Id.* ¶ 11.

But this argument all hinges on a threshold question: is AVS a required party under Rule 19(a)? *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632 (7th Cir. 2009), explains why this is the threshold question:

> Rule 19(a) addresses "persons required to be joined if feasible," and Rule 19(b) describes what the court must do if joinder is not feasible. The *first step*, however, is to identify which parties (if any) fall within the scope of the rule. . . . Once such a party has been identified, the Rule prescribes what the court must do. . . . *Only* if the court determines that a party meets the criteria of Rule 19(a)(1)(A) and (B), but the party cannot be joined (usually because joinder would destroy complete diversity or the court lacks personal jurisdiction over it) must the court turn to Rule 19(b) and decide what to do about the problem.

*Id.* at 635 (emphases added). Applied here, the threshold question is whether AVS is a required party, either because in AVS's absence, the Court cannot grant complete

---

[2]Because Defendants' argument for dismissal is really premised on Rule 19(b), the only possible basis for dismissal is Rule 12(b)(7), failure to join an indispensable party, not Rule 12(b)(1), lack of subject matter jurisdiction.

6

relief among the existing parties, Fed. R. Civ. P. 19(a)(1)(A), or because AVS claims an interest in the subject of the action and resolving the case in AVS's absence may impede AVS's ability to protect that interest or leave King Amusements with a substantial risk of double obligations, Fed. R. Civ. P. 19(a)(1)(B). The answer is no. According to the allegations in Firestone's complaint and attached exhibits, which the Court must accept as true for purposes of deciding Defendants' motion to dismiss, AVS assigned its interests in the promissory notes to Firestone. Compl. ¶¶ 10, 19. An assignor is not an indispensable party (within the meaning of Rule 19(a)) to a suit by the assignee. *Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*, 686 F.2d 498, 505 n.18 (7th Cir. 1982). Indeed, because AVS assigned its interests to Firestone, Firestone is capable of adequately representing AVS's interests in this lawsuit. *Id.* at 505.

Defendants do not explain why this general rule should not apply here. It is true that AVS might be an indispensable party if Firestone repudiates the assignment or if AVS rescinds the assignment. *See id.* at 505 n.18. Although Defendants assert that "AVS has consistently demanded funds from Defendants that belie its assignment agreement with Plaintiff Firestone," Defs.' Br. ¶ 12, this assertion does not show a repudiation. In Illinois,[3] repudiation of a contract "usually . . . consists of a statement

---

[3]The Court notes that the parties agreed, in the security agreement dated September 23, 2009, that the "promissory note and the rights and remedies of the parties shall be interpreted, construed and enforced in accordance with the laws and public policy of the Commonwealth of Massachusetts in any legal action hereunder." Pl.'s Exh. 2 ¶ 14. But both parties have argued exclusively under Illinois law, and "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.,* 942 F.2d 425, 427 (7th Cir. 1991); *see also Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) ("[C]hoice of law, not being jurisdictional, is normally . . . waivable." (citations omitted)). Because both parties assume that Illinois law governs this dispute, the Court applies Illinois

7

that the *repudiating party* cannot or will not perform," *Busse v. Paul Revere Life Ins. Co.*, 793 N.E.2d 779, 783 (Ill. App. Ct. 2003) (emphasis added) (internal quotation marks and citation omitted), and assignments are governed by contract law. *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 229 (Ill. App. Ct. 2008). Thus, the focus is on *Firestone's* actions (not AVS's), and Defendants have not shown that Firestone has repudiated the assignment by stating that it cannot or will not perform under the assignment. Nor have Defendants asserted that the assignment ought to be rescinded due to fraud or misrepresentation by Firestone or AVS during contract formation. *See Puskar v. Hughes*, 533 N.E.2d 962, 966 (Ill. App. Ct. 1989). Indeed, such an argument is likely foreclosed by the extent to which Defendants allege AVS has worked with Firestone to collect on Defendants' debt. *See* Defs.' Br. ¶¶ 3, 10. Accordingly, AVS's assignment of its interests in Defendants' debt to Firestone is valid.

Because AVS validly assigned its interests in Defendants' debt to Firestone, AVS is not an indispensable party under Rule 19(a)(1)(A) or (B) to this case. At most, Defendants' uncertainty about whether AVS correctly credited the repossessed equipment to King Amusements' account (presumably meaning the account owed to Firestone), Defs.' Br. ¶ 10; R. 24-1, King Aff. ¶ 9, may allow Defendants to make AVS liable for part of Firestone's claim against them. If so, as Firestone suggests, Defendants ought to file a third-party complaint against AVS. *See* Fed. R. Civ. P. 14(a); R. 30, Pl.'s Resp. at 6. But Firestone's complaint need not be dismissed on the grounds

---

law despite the choice-of-law clause in the security agreement.

that the mandatory joinder of AVS would destroy diversity jurisdiction. Defendants' motion to dismiss is therefore denied.

### B. King Amusements' Counterclaims

King Amusements also counterclaims against Firestone. King Amusements advances two claims: (1) Firestone breached its contract with King Amusements by selling repossessed collateral to third-parties without providing the required notice of the sale to King Amusements, and (2) King Amusements owes Firestone a "set off" for improperly repossessing equipment owned by TouchTunes and not King Amusements. *See* Am. Countercl. at 2-4. Firestone moves to dismiss the counterclaims.

### 1. Breach of Contract Counterclaim (Counterclaim One)

Firestone first moves to dismiss the breach of contract counterclaim, arguing that although King Amusements can claim improper disposition of repossessed collateral under Uniform Commercial Code (UCC) § 9-626, King Amusements has not plausibly pled that Firestone violated that section. R. 45, Pl.'s Mot. Dismiss at 4-5. In response, King Amusements denies that UCC § 9-626 applies. R. 48, Defs.' Resp. ¶ 3. But paragraph 5 of both security agreements explicitly provides that Firestone "shall have all the rights and remedies of a secured party under the Uniform Commercial Code," which puts to rest King Amusements' rebuttal argument. Pl.'s Exh. 2 ¶ 5; Pl.'s Exh. 7 ¶ 5. And the UCC "applies to a transaction, regardless of its form, that creates a security interest in personal property." 810 ILCS 5/9-109(a)(1). Because King

Amusements executed two security agreements that gave Firestone security interests in gaming equipment, the UCC does apply here.

The irony is that King Amusements resists the UCC's application, but the UCC actually helps King Amusements. Under the UCC, "[e]very aspect of a disposition of collateral [after default], including the method, manner, time, place, and other terms, must be commercially reasonable." 810 ILCS 5/9-610(b). Thus, a secured party must provide a "a reasonable authenticated notification of disposition" before any repossessed collateral is sold. 810 ILCS 5/9-611(b). And if a secured party fails to comply with the UCC's reasonable notice requirement, the debtor's liability for the amount owed may be reduced if the proceeds obtained from the noncomplying sale of the collateral is less than the proceeds that would have been obtained had the secured party complied with the notice requirement. 810 ILCS 5/9-626(3)(B).

Here, King Amusements alleges that Firestone repossessed gaming equipment collateralizing the promissory notes and then privately sold that collateral to third-parties at less than fair market value. Am. Countercl. ¶¶ 8-9, 13. Before that private sale, Firestone (allegedly) did not provide King Amusements notice of the collateral sale at all, much less reasonable notice. *Id.* ¶ 10. King Amusements therefore did not have the chance to repurchase the equipment. *Id.* ¶ 12. Read together, these allegations plausibly plead that had King Amusements been properly notified of the sale and given the chance to repurchase the collateral, Firestone would not have sold the collateral at less than fair market value, but would have instead received higher

10

sales proceeds to apply to King Amusements' debt. Accordingly, § 9-626 entitles King Amusements to bring a claim for the difference in proceeds had Firestone provided it the required notice.

In its reply brief, Firestone advances two rebuttal arguments: first, "[a] defendant does not have an independent claim for relief merely because it contests the amount sought, or contends that it is entitled to a larger credit against its debt," and second, "[d]efendants do not identify any statutory basis for their counterclaim." R. 49, Pl.'s Reply at 2, 3. As for Firestone's first argument, as discussed, UCC § 9-626 entitles debtors to contest the amount by which their debt had been reduced if the secured party fails to provide reasonable notification before disposing of the collateral. Indeed, § 9-626 imposes a *rebuttable presumption* against the secured party that the amount received from an unnoticed (noncomplying) collateral sale is equal to the amount owed by the debtor. *Gen. Motors Acceptance Corp. v. Stoval*, 872 N.E.2d 91, 101 (Ill. App. Ct. 2007) (citation omitted). Nothing in the text of § 9-626 requires the debtor to wait until the secured party comes to collect on its deficiency before raising a failure to notify as an affirmative defense, which Firestone contends is the proper procedure. And *LaSalle Business Credit, Inc. v. Lapides*, which Firestone relies upon, does not support that proposition. *See* 2003 WL 722237, at *14 (N.D. Ill. Mar. 3, 2003) (holding that a debtor did *not* waive a commercial reasonableness defense by not pleading it with his affirmative defenses). As for the second argument, a complaint need not plead a specific legal theory or statutory basis; it need only plead facts that would provide the

11

plaintiff with a right to recover no matter the legal theory. *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003). So King Amusements' failure to explicitly plead the UCC (or any other statutory basis) is not, in and of itself, a fatal deficiency. Accordingly, Firestone's motion to dismiss King Amusements' first counterclaim is denied.

## 2. Set Off Counterclaim (Counterclaim Two)

Second, Firestone contends that King Amusements has not plausibly pled a claim for set off. A set off "refers to the situation[] when a defendant has a distinct cause of action against the same plaintiff who filed suit against him and is subsumed procedurally under the concept of counterclaim." *Thornton v. Garcini*, 928 N.E.2d 804, 811-12 (Ill. 2010) (internal quotation marks and citation omitted). Thus, a set off claim has been supplanted by the permissive counterclaim; as such, a set off claim may involve a netting out of opposing claims between the plaintiff and the defendant, but it need not. *See* Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party *any* claim that is not compulsory." (emphasis added)); *Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1440 (7th Cir. 1993) ("Although as a procedural device the setoff has been supplanted by the permissive counterclaim, the term is *sometimes* used . . . to mean an offset to liability, a netting out of opposing claims." (emphasis added)). Thus, Firestone's contention that a set off claim generally requires "a debt owed by the plaintiff to the defendant arising from a separate transaction and a netting out of opposing claims" is incorrect. Pl.'s Mot. Dismiss at 5 (emphasis omitted).

But as a permissive counterclaim, a set off claim must still plausibly plead a claim upon which relief can be granted, and it is unclear exactly what claim King Amusements attempts to plead. In its amended counterclaims, King Amusements alleges that Firestone sold repossessed equipment that was owned by TouchTunes and not owned by King Amusements. Am. Countercl. ¶¶ 17, 19. This harmed King Amusements' business relationship with TouchTunes and deprived it of revenue from the lost TouchTunes gaming equipment. *Id.* ¶¶ 21-22. King Amusements also settled a debt with TouchTunes for $7,000, an amount that allegedly included the removed gaming equipment. *Id.* ¶ 20; R. 41-1, Defs.' Exh. C at 4-5. Read together, these allegations do not, at first glance, cohere into a specific claim.

One possible claim that King Amusements might be attempting to plead here is wrongful repossession of collateral. Under the UCC, a secured party may take possession of the secured collateral upon default by the debtor, without judicial process, if it repossess the collateral without breaching the peace. 810 ILCS 5/9-609(b)(2). This provision might allow King Amusements to contest some aspect of Firestone's repossession of TouchTunes equipment. But it has not pled, or argued, that Firestone lacked a security interest in the repossessed equipment. *See* Am. Countercl. ¶ 17 (pleading only that the repossessed equipment "was not owned by King Amusements, Inc."); Defs.' Resp. ¶ 4 (arguing that Firestone repossessed equipment "that was not an asset of Counter-Plaintiff"). Neither has it pled that Firestone's repossession of the collateral breached the peace. *See Johnson v. Grossinger Motorcorp,*

13

*Inc.*, 753 N.E.2d 431, 440 (Ill. App. Ct. 2001) ("The term 'breach of the peace' connotes conduct that incites or is likely to incite immediate public turbulence, or that leads to or is likely to lead to an immediate loss of public order and tranquility." (citation omitted)). Thus, the second counterclaim does not plausibly plead a claim for wrongful repossession of collateral.

Because King Amusements has failed to plead a claim under the UCC (or any other statute) for wrongful repossession, perhaps King Amusements is trying to rely on common law remedies. *Kouba v. E. Joliet Bank*, 481 N.E.2d 325, 328 (Ill. App. Ct. 1985). Although the pleading should have been more clear, the Court does conclude that King Amusements has adequately pled claims for common law conversion or trespass to chattels. Under Illinois law, conversion and trespass to chattels permit someone with a possessory interest in property to recover damages from a person who wrongfully deprives the owner/possessor of his interest in the property. *See, e.g.*, *Dargis v. Paradise Park, Inc.*, 819 N.E.2d 1220, 1227-28 (Ill. App. Ct. 2004); *Andrews v. Mid-Am. Bank & Trust Co. of Fairview Heights*, 503 N.E.2d 1120, 1122 (Ill. App. Ct. 1987); Restatement (Second) of Torts § 217 (2012). Here, King Amusements pled that TouchTunes, and not King Amusements, owned the equipment that was repossessed. *See* Am. Countercl. ¶¶ 17, 19. That equipment, two jukeboxes, was owned by TouchTunes and appears to have been leased or loaned to King Amusements. *See* Defs.' Exh. C at 4-5. Even if King Amusements defaulted on the loan made by TouchTunes, still King Amusements had the right to possess the two jukeboxes as against everyone

else, including AVS and Firestone. King Amusements has plausibly pled a set off claim in the form of conversion and trespass to chattels.

### C. Firestone's Motion for Replevin

Finally, Firestone moves for an order of replevin to secure the return of the equipment collateralizing the security agreements. "Whenever any goods or chattels have been . . . wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 ILCS 5/19-101. The parties join issue over whether Firestone has established a prima facie case for replevin, which requires Firestone to prove that (1) it is the owner of the relevant property or lawfully entitled to its possession; (2) that the property is wrongfully detained by the defendant (after the defendant has refused a demand to surrender the property); and (3) that the property is not subject to any state tax, assessment, or fine. 735 ILCS 5/19-104; *First Illini Bank v. Wittek Indus., Inc.*, 634 N.E.2d 762, 763 (Ill. App. Ct. 1994). Defendants argue that Firestone has not satisfied these three elements. R. 29, Defs.' Resp. to Pl.'s Mot. for Replevin ¶ 4. For its part, Firestone argues that its complaint serves as a demand to surrender the property, but in any event a demand would have been futile. R. 34, Pl.'s Reply at 2-4. What the parties overlook, however, is the threshold issue of whether the Court can even grant replevin at this pre-discovery stage in the litigation.

Procedural due process provides Defendants with "the right to a prior opportunity to be heard before chattels are taken from their possessor." *Fuentes v.*

*Shevin*, 407 U.S. 67, 96 (1972). Thus, "[n]o order for replevin may be entered nor may property be seized pursuant to an order for replevin prior to . . . notice and [a] hearing." 735 ILCS 5/19-105. The required hearing must involve judicial review of the basis of Firestone's claim to possession; the Court may only enter an order of replevin "[i]f the plaintiff establishes a prima facie case to a superior right to possession of the disputed property, and . . . also demonstrates . . . the probability that the plaintiff will ultimately prevail on the underlying claim to possession." 735 ILCS 5/19-107. These are strict statutory requirements that must be followed precisely. *Carroll v. Curry*, 912 N.E.2d 272, 274-75 (Ill. App. Ct. 2009).

In this case, there has been no such hearing yet. Nor has Firestone alleged circumstances excusing the hearing requirement, such as the imminent destruction, concealment, or sale of the gaming equipment securing Defendants' debt. 735 ILCS 5/19-106(1), (4). And none of the cases Firestone relies upon granted an order of replevin, absent these emergency circumstances, merely upon a plaintiff's motion before the holding of a hearing or even before discovery. *See Country Mut. Ins. Co. v. Styck's Body Shop, Inc.*, 918 N.E.2d 1195, 1200 (2009) (reviewing a jury verdict awarding damages for a replevin claim); *Carroll*, 912 N.E.2d at 274 (reviewing a grant of replevin during summary judgment); *Wittek*, 634 N.E.2d at 763 (same); *Harris-Intertype Corp. v. Donley Bindery Co.*, 324 N.E.2d 668, 671 (Ill. App. Ct. 1975) (reviewing a grant of replevin after a § 5/19-107 hearing and during summary judgment). Nor has the Court identified any cases granting replevin before a hearing

16

or discovery. *See RBS Citizens, N.A. v. Ramzanali*, 2011 WL 2565941, at *5 (N.D. Ill. June 29, 2011) (granting replevin during summary judgment); *Ctr. Capital Corp. v. Burmac Metal Finishing Co.*, 2002 WL 1874823, at *1 (N.D. Ill. Aug. 13, 2002) (same); *Novak Food Svc. Equip., Inc. v. Moe's Corned Beef Cellar, Inc.*, 460 N.E.2d 443, 445 (Ill. App. Ct. 1984) (reviewing the denial of replevin after a § 5/19-107 hearing).

So under both Illinois statute and caselaw, granting replevin based solely on a contested, pre-discovery motion for replevin would be improper, particularly because the motion is supported only by an affidavit that largely parrots the allegations contained in Firestone's motion itself. *See generally* R. 20-1, Pl.'s Exh. C, Michael Smith Aff. Thus, both parties must have the benefit of discovery to determine whether Firestone can present a prima facie case that it is entitled to an order of replevin.[4] Accordingly, Firestone's motion for replevin is denied without prejudice, pending the results of discovery.

---

[4]Given the extent to which the parties quarrel over whether Firestone properly demanded that Defendants return the equipment securing the debt at issue, the Court notes that nothing prevents Firestone from making this demand now. Indeed, formally demanding return of the collateral is perhaps the best course of action; although Firestone cites *Harris-Intertype,* 324 N.E.2d at 671, for the proposition that the complaint itself serves as the demand, at least one more recent Illinois appellate court decision has held that "the demand requirement remains an essential part of wrongful detention in a replevin action." *Wittek*, 634 N.E.2d at 764 ("We consider the statement of the *Harris-Intertype* court that demand is not required to be dicta.").

17

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [R. 24] is denied, Firestone's motion to dismiss the counterclaims [R. 45] is denied, and Firestone's motion for replevin [R. 20] is denied without prejudice.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2013